CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
October 21, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **RANDALL LEE STACEL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00723 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CHATHAM JAIL, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Randall Lee Stacel, Pro Se Plaintiff; Nathan H. Schnetzler and Austin L. Obenshain, FRITH ANDERSON & PEAKE PC, Roanoke, Virginia, for Defendants.*

The plaintiff, a former inmate proceeding pro se, has filed a civil rights action under 42 U.S.C. § 1983, alleging that the defendants used excessive force against him when he was in custody at the jail in Chatham, Virginia. By Opinion and Order entered March 31, 2026, Stacel's claims against Chatham Jail and Chatham, Virginia, were dismissed. Op. & Order, Dkt. No. 11. The remaining defendants, Sgt. Worley and Officer Johnson, have filed a Motion to Dismiss (Motion), Dkt. No. 18, and the matter is ripe for consideration. Upon review, I conclude that the Motion must be granted, and Stacel's Complaint will be dismissed.

## I. BACKGROUND.

Stacel's allegations are brief. He claims as follows:

> The jail in Chatham VA. The officers named beat me up its all on camera and many eye witnesses seen this! I resieved [sic] a black eye

> the skin torn off my knees a torn rotator cuff in my shoulder reinjury in my back that I had surgery on! Bruising on my body was knocked out thrown in a pod on the concrete floor and went into a seissure [sic] then taken to the hospital in an ambulance and treated going to have surgery on my shoulder and near bone that's out of socket I a 66 year old veteran that's disabled on retirement.

Compl. 5, Dkt. No. 1. As relevant here, Stacel answered "[n]o" to the § 1983 complaint form's prompt inquiring if he had filed a grievance concerning the facts related to the Complaint. *Id.* at 6. To explain why he had not, he stated, "at least 20 men put grievances on this incident," so he believed he did not have to submit a grievance. *Id.* at 7. He further explained that he "was transferred from the jail before [he] could get the 1983 form from the jail." *Id.*

The basis of the defendants' subject Motion is that Stacel admitted that he failed to exhaust his administrative remedies and that he did not provide a sufficient excuse to avoid the Prison Litigation Reform Act's (PLRA) exhaustion requirement. In response, Stacel stated that after the alleged assault, he "had been heavily medicated," "was sleeping 16-18 hours a day," and "then after weeks was suddenly transferred." Pl. Resp. to Defs.' Mot. Dismiss, Dkt. No. 21. Then, once he arrived at a different facility, he "was incoherent mostly," but was able to "fill[] out the 1983 form and all papers that the United States District Cout had sent [him]." *Id.* The defendants filed a reply brief, and Stacel thereafter submitted an additional filing, in which he elaborates on the details of the alleged assault.

Specifically, Stacel provides that following a stroke, medical officials approved his placement in a single cell. The defendants disregarded his placement, stating that they needed the cell for another purpose. Stacel asked to speak to Captain Meeks, and "that's when the assault began." Add'l Ev. 1, Dkt. No. 24. According to Stacel, he "never resisted whatsoever." *Id.* He claims that "there was many inmates that witnessed the [w]hole thing and many grievances were put in by them." *Id.* at 2. He further insists that there is video evidence of the incident and expresses frustration with his daughter's efforts to get access to them. Stacel was then transferred to another facility. When he arrived to the new facility, he recounts his treatment and diagnosis by a physician. He also explains that he was evaluated by another physician in Danville, Virginia, when he was subsequently released from incarceration. Finally, he describes his injuries and pain that he has experienced.

Considering the foregoing, Stacel's Complaint must be dismissed based on his failure to exhaust available administrative remedies.

## II. Discussion.

### A. Standard of Review.

A motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Exhaustion of Available Administrative Remedies.**

Under the PLRA, a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted his available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The purpose of the exhaustion requirement is to give prison officials a fair opportunity to address the problem that will later form the basis of the lawsuit. *Moore v. Bennette*, 517 F.3d 717, 729 (4th Cir. 2008). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Then, the burden of proof shifts to the inmate to show, by a preponderance of the evidence,

either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

Although "an inmate does not need to demonstrate exhaustion of administrative remedies in his complaint" and "failure-to-exhaust is an affirmative defense that the defendant must raise," a complaint may nevertheless be dismissed "when the facts alleged in the complaint, taken as true, prove that an inmate failed to exhaust his administrative remedies." *Curtis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Here, the defendants have raised an exhaustion defense and assert that Stacel admitted to his failure to exhaust administrative remedies in his Complaint. Indeed, it is apparent from the face of Stacel's Complaint that he had failed to exhaust his administrative remedies where he clearly marked "[n]o in response to the inquiry on the § 1983 complaint form whether he had filed a grievance concerning the facts related to the allegations raised in the Complaint. Compl. 6, Dkt. No. 1

Furthermore, Stacel was given the opportunity to respond to the defendants' exhaustion defense and did so on two occasions. *See Curtis*, 851 F.3d at 362–63 (explaining that when screening an inmate's complaint, a court cannot demand the inmate provide further documentation of exhaustion; however, there is a "narrow" exception to dismissal of an inmate's complaint for failure to exhaust "when the

defendants raise the issue as an affirmative defense and the inmate had an opportunity to respond to the affirmative defense"). In both filings, Stacel ignores the exhaustion arguments raised and, instead, emphasizes his injuries from the alleged assault. Although Stacel claims that after the use of force incident he was heavily medicated, sleeping for most of the day, and subsequently transferred to another facility, he does not claim that he attempted to begin the exhaustion process at either facility. *Cf. Curtis*, 851 F.3d at 361 (finding dismissal improper where the inmate alleged in the complaint that he "attempted" to exhaust his administrative remedies). As the defendants correctly point out, Stacel's transfer to a different facility is not an excuse for failing to initiate the process. *Mattox v. Trinity Serv. Grp.*, No. 7:25-cv-00473, 2026 WL 1749558, at *2 n.4 (W.D. Va. June 17, 2026) ("[C]ourts consistently find that transfer to a different facility does not excuse the exhaustion requirement.") (quoting *Toliver v. USP Lee*, No. 7:19-cv-00213, 2020 WL 5027137, at *4 (W.D. Va. Aug. 25, 2020)). Additionally, Stacel's purported health issues are insufficient to excuse his failure to exhaust administrative remedies, particularly where he admitted to being physically able to fill out other paperwork, such as the § 1983 complaint form.

Moreover, Stacel does not assert that officials thwarted his efforts to complete the exhaustion requirement or otherwise acted in such a way to render administrative procedures unavailable. *See Ross*, 578 U.S. at 644 (explaining that a facility's

administrative procedure is unavailable for purposes of the exhaustion requirement when officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Although he stated that he did not believe he had to submit grievances because other inmates had done so, there is no allegation that a prison official misled him to believe this in order to make administrative remedies unavailable to him. And, in any event, courts have concluded that "a plaintiff's failure to exhaust cannot be excused by ignorance of the law or the grievance policy." *Taylor v. Sw. Va. Reg'l Jail Auth. Duffield*, No. 7:20-cv-00147, 2021 WL 607091, at *3 (W.D. Va. Feb. 16, 2021) (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 221 n.2 (6th Cir. 2011)).

Therefore, it is clear based on Stacel's allegations that he has failed to exhaust the mandatory exhaustion requirement under the PLRA in order to proceed with this lawsuit, and the defendants' Motion must be granted.

## III. CONCLUSION.

Accordingly, for the reasons stated, the defendants' Motion to Dismiss, Dkt. No. 18, will be granted, and Stacel's Complaint will be dismissed. A separate Judgment will be entered.

ENTER: October 21, 2026

/s/ JAMES P. JONES
Senior United States District Judge